MURDOCK, Justice
(dissenting).
Section 15-22-32(a), Ala.Code 1975, provides:
“Whenever there is reasonable cause to believe that a prisoner who has been paroled has violated his or her parole, the Board of Pardons and Paroles, at its next meeting, shall declare the prisoner to be delinquent, and time owed shall date from the delinquency. The warden of each prison shall promptly notify the board of the return of a paroled prisoner charged with violation of his or her parole. Thereupon, the board, a single member of the board, a parole revocation hearing officer, or a designated parole officer shall, as soon as practicable, hold a parole court at the prison or at another place as it may determine and consider the case of the parole violator, who shall be given an opportunity to appear personally or by counsel before the board or the parole court and pro *76 duce witnesses and explain the charges made against him or her. The board member, parole revocation hearing officer, or a designated parole officer, acting as a parole court, shall, within a reasonable time, conduct the parole revocation hearing to determine guilt or innocence of the charges and may recommend to the board revocation or reinstatement of parole. Upon revocation of parole, the board may require the prisoner to serve out in prison the balance of the term for which he or she was originally sentenced, calculated from the date of delinquency or the part thereof as it may determine. The delinquent parolee shall be deemed to have begun serving the balance of the time required on the date of his or her rearrest as a delinquent parolee.”
(Emphasis added.)
Based on the foregoing emphasized passages, as well as the decisions of the Court of Criminal Appeals in Sundberg v. Thomas,, 13 So.3d 43 (Ala.Crim.App.2009), and Writesman v. Alabama Department of Corrections, 54 So.3d 450 (Ala.Crim.App.2010), I believe the plain meaning of the statute is that a parolee is to be considered as resuming service of time on his or her sentence when there is a declaration that the parolee is delinquent coupled with a restraint of the parolee’s liberty because of that delinquency.
I acknowledge, as the main opinion notes, that Roosevelt James Upshaw’s arrest in Georgia initially occurred because of his alleged commission of new offenses in that state and, thus, before he was declared a delinquent parolee based on those new charges. The majority focuses on the moment Upshaw initially was taken into custody in Georgia and reasons that he “was not arrested at that time ‘as a delinquent parolee.’” 141 So.3d at 72 (emphasis added). Subsequently, however, Georgia authorities were made aware of Upshaw’s parole delinquency in Alabama. From that time forward, the State of Georgia necessarily held Upshaw in custody for two adequate and independent reasons: the new Georgia charges that were then pending and Upshaw’s parole delinquency in Alabama. Even if the Georgia charges had for some reason been dismissed, the Georgia authorities would have continued Upshaw’s “arrest”[5] pursuant to the State of Georgia’s agreement with the State of Alabama.
In addition, I see nothing in the language of the statute that draws any distinction between arrests occurring within the State of Alabama and those occurring outside the State of Alabama. Accordingly, under the statutory interpretation adopted in the main opinion, § 15-22-32(a) would not apply to a parolee arrested within the State of Alabama on some new criminal charge for which he is held in custody until the completion of his trial and any ensuing prison sentence, even if the parole board declared him to be delinquent promptly after his arrest on the new charge. We could no more say in that circumstance than we can in the present case that the parolee was arrested “at that time ‘as a delinquent parolee.’ ” I believe this interpretation conflicts with the plain meaning of § 15-22-32(a) and, in effect, reduces that statute from one that governs any parole delinquency to one that applies only to parole delinquencies not involving the commission of a new crime.
Although I believe that the statute plainly applies to the present case, even if we were to assume an ambiguity exists, the rule of lenity would require this Court to construe the statute in the foregoing man *77 ner in any event. See, e.g., generally, Ex parte Bertram, 884 So.2d 889, 892 (Ala. 2008) (‘“[T]he fundamental rule [is] that criminal statutes are, construed strictly against the State. See Ex parte Jackson, 614 So.2d 405 (Ala.1993).’ Ex parte Hyde, 778 So.2d 237, 239 n. 2 (Ala.2000) .... The ‘rule of lenity requires that “ambiguous criminal statute[s] ... be construed in favor of the accused.” ’ Castillo v. United States, 530 U.S. 120, 131, 120 S.Ct. 2090, [2096,] 147 L.Ed.2d 94 (2000)....” (emphasis omitted)).
Finally, although not presented as a direct ground for relief in Upshaw’s petition for a writ of habeas corpus, I believe that interpreting § 15-22-32(a) as applying to an in7state incarceration on a new charge but not to an out-of-state incarceration on a new charge does implicate equal-protection concerns and the rule that we are to construe a statute, if possible, to avoid constitutional infirmities. See, e.g., City of Homewood v. Bharat, LLC, 931 So.2d 697, 701 (Ala.2005).
Based on the foregoing, I respectfully dissent.
MOORE, C.J., concurs.

. Black's Law Dictionary 124 (9th ed. 2009), defines "arrest” as "[t]he taking or keeping of a person in custody by legal authority.”